**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:15-CV-00145 HBB**

**WILLIAM A. SKAGGS**                                                                                      **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                                **DEFENDANT**

**MEMORANDUM, OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of William A. Skaggs ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 16) and Defendant (DN 22) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered February 9, 2016 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Supplemental Security Income benefits (SSI) on July 17, 2012 (Tr. 11). Plaintiff alleged that he became disabled on November 26, 2010 as a result of a back condition, a heart condition, depression, anxiety, Hepatitis C, seizures, arthritis in hand, personality disorder, hernia, and a stomach condition caused by Hepatitis C (Tr. 194). Administrative Law Judge Robert B. Bowling ("ALJ") conducted a video hearing on February 3, 2014. The ALJ was in Lexington, Kentucky, and Plaintiff was in Campbellsville, Kentucky. Plaintiff was present and represented by M. Gail Wilson. Also present and testifying was vocational expert Martha Goss.

In a decision dated March 26, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 12). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 17, 2012, the application date (Tr. 13). At the second step, the ALJ determined that Plaintiff's degenerative disc disease, left arm deformity, chronic heart failure, status/post aortic valve replacement, depression, anxiety, and history of polysubstance abuse in remission are "severe" impairments within the meaning of the regulations (Id.). Notably, at the second step, the ALJ also determined that Plaintiff's Hepatitis C, hypertension, chronic obstructive pulmonary disease, gastro esophageal reflux disease, acute bronchitis, seizure disorder, deep vein thrombosis legs, dental caries, pharyngitis, and ventral hernia are "non-severe" impairments within the meaning of the regulations (Tr. 14). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work (Tr. 16). More specifically, the ALJ found that Plaintiff cannot perform repetitive bending or twisting, cannot climb ladders, ropes, or scaffolds, cannot climb ramps and stairs more than occasionally, cannot crouch crawl or stoop more than occasionally, cannot kneel more than frequently, and cannot reach, finger, or handle with the nondominant, left upper extremity more than occasionally. The Plaintiff should avoid concentrated exposure to vibrations, hazardous machinery, and unprotected heights. Plaintiff is limited to simple, routine, and repetitive tasks performed in a work environment free from fast-paced production requirements involving only simple, work-related decisions and with few if any workplace changes. Finally, Plaintiff should have only limited interaction with the general public, supervisors, and coworkers (Tr. 16). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a drywall installer/applicator (Tr. 23).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 23-24). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from July 17, 2012, through the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 176). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. Relying on testimony from the vocational expert, the ALJ demonstrated that Plaintiff could perform a substantial number of jobs that exist in the local and national economy, including those of janitor/cleaner and machine tender (Tr. 24, 61-62). Notably, there was a discrepancy between the vocational expert's opinion and the Dictionary of Occupational Titles ("DOT"). The expert reduced her estimate of the total number of jobs available in each field to account for additional limitations that the Plaintiff possesses (Tr. 24). The ALJ concluded that, given this information, the discrepancy did not render the expert's testimony inconsistent with the DOT. The Sixth Circuit has held that such reasonable reliance on the testimony of a vocational expert is proper. Conn v. Sec'y of Health & Human Servs., 51 F.3d 607, 610 (6th Cir. 1995).

A

Plaintiff first argues that the ALJ erred in choosing to discount the opinion of counselor Latisha Collins (DN 16, p. 4). The Plaintiff specifically claims that the ALJ did not provide good reasons for discounting the weight he afforded Ms. Collins' opinion, presumably arguing that Ms. Collins, a counselor, is an acceptable medical source entitled to the protections of the treating source rule. The undersigned concludes that the ALJ did in fact provide good reasons for this opinion, but regardless, the rule does not apply where Ms. Collins is a counselor, and therefore not an acceptable medical source under the regulations. The treating source rule does not apply to her opinion. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011).

The ALJ did not, as Plaintiff maintains, summarily dismiss Ms. Collins' opinion, but rather discussed it thoroughly and exercised sound judgment in determining what weight to afford it. For instance, the ALJ compared Ms. Collins' opinion with the remainder of the medical record and noted "glaring inconsistencies" between it and the clinical findings on record

(Tr. 21). Moreover, the ALJ noted that Counselor Collins' January, 2014 report not only contradicted the objective medical record, but contradicted her own prior evaluations of the Plaintiff (Tr. 22). Ms. Collins' report states that Plaintiff possesses "marked and/or severe limitations" (Id.). Yet the statement further indicates that the Plaintiff can travel independently and maintains a coherent thought process, intact memory, and fair judgment and insight (Tr. 22, 353-59). Even when considered on its own, this obvious inconsistency casts doubt on Ms. Collins' ultimate conclusion.

Several additional inconsistencies are present. The ALJ noted the discrepancy between the Plaintiff's Global Assessment of Functioning ("GAF") score and Ms. Collins' statements (Tr. 22). Ms. Collins assigned the Plaintiff a GAF score of 55 (Tr. 357), which the ALJ pointed out is consistent with only moderate levels of impairment (Tr. 22). Again, this contrasts starkly with Ms. Collins' grim assessment of Plaintiff's level of functioning. Finally, the ALJ pointed to numerous instances in Plaintiff's mental health records from Adanta which indicated that his functioning was much higher than Ms. Collins' assessment suggested (Tr. 22). For example, the ALJ noted that Mr. Skaggs Adanta records reflect that he was responding well to medication and therapy and had experienced improved mood stability, clearer cognition, and increased motivation (Tr. 22, 328-334). Again, these records directly contradict Ms. Collins' assessment. The ALJ's decision to afford Ms. Collins' opinion little weight is therefore supported by substantial evidence.

The Plaintiff appears to argue that Ms. Collins was due the deference owed a treating source (DN 16 at p. 4-5). However, counselors are not considered acceptable medical sources under the regulations. Only licensed physicians (medical osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language

pathologists are classified as "acceptable medical sources." 20 C.F.R. § 416.913(a)(1)-(5). Plaintiff has provided no evidence that Ms. Collins fits into any of these categories, and the ALJ therefore correctly concluded that the treating source rule does not apply.

Although the treating source rule does not apply to the opinion rendered by Ms. Collins, Social Security Ruling 06-03p indicates the factors in 20 C.F.R. § 416.927(c) can be applied when the ALJ assigns weight to her opinion. This means the ALJ is permitted to weigh the opinion based on factors such as "the examining relationship (or lack thereof), specialization, consistency, and supportability[.]" Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) ((citations omitted). The ALJ need not weigh each of the factors enumerated in the regulations individually or in great detail, and each assessment will depend on the facts of the particular case. SSR 06-03p.

In the present matter, the ALJ offered a thorough evaluation of Ms. Collins' assessment, discussing a number of inconsistencies and unsupported assertions. As outlined above, while it is true that Ms. Collins had a relatively long-term treating relationship with the Plaintiff, whatever weight that relationship may have been due was mitigated by her incredible assessment. The ALJ easily satisfied the requirements set forth in the regulations. Therefore, the ALJ's assessment of Ms. Collins' opinion is supported by substantial evidence and comports with all applicable laws.

B

Plaintiff next argues that the ALJ erred in failing to consider Mr. Skaggs' testimony concerning the side effects of his medication (DN 16 at p. 6). This simply is not the case. The ALJ noted that the Plaintiff complained that his Klonopin and Zoloft caused drowsiness (Tr. 17), that his blood thinners made him more prone to experience temperature extremes in the summer

and winter (Id.), and that Plaintiff's medical reports from Adanta reflect that the Plaintiff said his medications were working (Tr. 19). Finally, the ALJ noted that other objective records do not support these contentions, as Plaintiff's records state that he was often alert, oriented, and cooperative with normal mood and affect (Tr. 20). Therefore, Plaintiff's contention that the ALJ did not consider the side effects caused by Plaintiff's medications is without merit.

Moreover, Plaintiff dedicates one sentence to this argument, and offers no argument in support of the assertion. It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999). Therefore, this argument is deemed waived.

C

Next Plaintiff argues that the ALJ failed to consider a medical opinion offered by cardiologist Dr. Campbell (DN 16 at p. 6). But Plaintiff has not identified any such medical opinion. Dr. Campbell did state that he would support a medical disability claim (Tr. 404-05); however, this vague statement of support does not amount to a diagnosis of disabling conditions beyond those already identified by the ALJ (Tr. 13). The same is true of Dr. Campbell's statement that Plaintiff appeared ill or chronically ill (Tr. 407). These opinions add nothing to the evidence of functional limitations upon which the ALJ based his determination. Rather, these statements are in reality opinions on the ultimate issue of Plaintiff's disability, a matter expressly the province of the Commissioner. 20 C.F.R 416.927(d).

Plaintiff had the opportunity, following the hearing, to submit additional relevant opinion evidence from Dr. Campbell addressing what, if any, functional limitations Dr. Campbell viewed the Plaintiff as having. Indeed, the Plaintiff did submit two additional reports from other sources about a month after the hearing that the ALJ considered (Tr. 28, 360, 435). Plaintiff offered no

such evidence from Dr. Campbell nor any explanation why he failed to supplement the record. Finally, the ALJ fully considered Dr. Campbell's relevant opinions. In fact, the ALJ found that Plaintiff's chronic heart failure and status/post aortic valve replacement were "severe" impairments within the meaning of the regulations (Tr. 13). Therefore, as to this claim, the ALJ's decision not to consider Dr. Campbell's conclusory statements concerning the ultimate issue of Plaintiff's disability is supported by substantial evidence and fully comports with all applicable laws.

## ORDER

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is ordered that judgment be granted for the Commissioner.

Copies: Counsel